■ In the Matter of PUBLIC EMPLOYEES FEDERATION (PEF) et al., Respondents, v DIVISION OF CLASSIFICATION AND COMPENSATION OF THE NEW YORK STATE CIVIL SERVICE COMMISSION et al., Appellants. — Casey, J. Appeal from an order of the Supreme Court at Special Term (Williams, J.), entered November 1, 1982 in Albany County, which, in an application pursuant to Judiciary Law § 753, enjoined respondents from engaging in coercive tactics which interfered with petitioners' rights.

In March 1980, respondents reclassified a job title for teachers employed by the Office of Mental Retardation and Developmental Disabilities (OMRDD). The reclassified position was designated developmental specialist. The change in classification was deemed necessary in order to provide full rehabilitative care to retarded persons under the supervision of that agency for a 12-month year, rather than on the 10-month schedule prescribed for teachers by Civil Service Law § 136 (2). Additionally, the reclassification sought to satisfy Federal regulations and the Willowbrook consent decree,[*] and thereby insure continued Medicaid funding. Realizing the impact that the increased responsibilities, the extension of the statutory year, and the resultant loss of summer employment would have upon teachers, respondents proposed that the newly classified title be allocated three grades higher than comparable grades of the teacher series (later reduced to two grades higher), and that accrual of vacation credits be permitted to those reclassified, a benefit denied teachers. Respondents elected to effectuate the reclassification of occupied teacher positions by offering the incumbents the opportunity for voluntary reclassification as developmental specialists. Coincidentally, respondents imposed certain conditions on those incumbents who elected not to have their positions reclassified.

Claiming that these conditions were inherently coercive and devised to abolish the teacher classification all together, petitioners attempted to annul the determination in a prior CPLR article 78 proceeding. On a prior appeal in that proceeding, this court affirmed the judgment of Special Term, generally favoring

---

[*] *New York State Assn. for Retarded Children v Carey* (US Dist Ct EDNY, 72-c-356, 72-c-357).

the petitioners (*Matter of Public Employees Fedn. v Division of Classification & Compensation,* 86 AD2d 679), but only to the extent that "[a]lthough a reclassification of teachers to Developmental Specialists on a purely voluntary basis would have been proper, respondents' attempts to withhold summer teaching jobs and impose salary penalties upon those who refused to choose reclassification violates the spirit and intent of subdivision 2 of section 136 of the Civil Service Law and is, therefore, invalid" (*supra,* p 680).

Six months later, petitioners commenced the present proceeding to enjoin respondents from engaging in coercive acts which allegedly interfere with petitioners' rights and to punish respondents for contempt for failure to obey the prior order of this court. Petitioners allege that these coercive acts include (1) the earmarking of all teacher positions so that each position will be abolished when it becomes vacant, (2) filling summer teaching positions from a group of candidates that consists of other qualified candidates as well as teachers, and (3) laying off teachers who have more seniority than developmental specialists not affected by the layoffs. Special Term refused to hold respondents in contempt due to petitioners' failure to demonstrate any substantial or willful lack of compliance with this court's prior order. This determination has not been appealed. Upon the finding that contempt was unwarranted, Special Term next considered and decided that petitioners were entitled to relief in the nature of an injunction to restrain violation "of the spirit of the decisions upon which the orders rest".

Aside from such a tenuous predicate on which to base injunctive relief, we disagree with the conclusion reached by Special Term and with petitioners' interpretation of our prior decision. The clear wording of that decision, quoted above, can in no way be construed as an expression of our dissatisfaction with the creation and classification of the separate title of developmental specialist made necessary by the circumstances. Rather, we specifically acknowledged it. Our concern was, and still is, that any transfer by the teachers, or any offer to induce them to transfer to or from such title, be done on "a purely voluntary basis", that teachers suffer no penalty or loss for their refusal to elect to transfer, and that those who have transferred to the newly created title be permitted to revoke their prior consents and return to the title of teacher without suffering loss of accrued rights and benefits. This concern is not based upon any illegality in respondents' creation of the new title of developmental specialist, but rather arises out of respondents' initial election to reclassify occupied teacher positions on a purely voluntary basis.

Contrary to petitioners' contention on this appeal, we never indicated that an employee, who was once a teacher, was a teacher forever and that those designated "teachers" can never lose that classification and its benefits by even a purely voluntary transfer to another title; or that positions held by teachers had to be kept and preserved, even after such positions became vacant, for the benefit of future teacher employees who have not yet even been hired; or that we preferred the rights, duties and privileges of one title over the other or considered the teacher and developmental specialist titles as identical, as petitioners seemingly contend. To accomplish the result intended by respondents, it would necessarily follow that the two titles be administered as separate and distinct from each other and that layoffs, promotions and other benefits be handled and assessed within the particular title concerned.

More specifically, in regard to those developmental specialists desiring to cancel their prior consents and to return to the title of teacher, we intended to preserve, upon their retransfer, the prior rights and benefits that such persons had accrued as teachers and, more importantly, perhaps, to assure that any such retransferees would not face the loss of employment as a teacher, which would occur if sufficient teaching positions were not maintained to accommodate their retransfer. Although this record is unclear as to whether any such employee is still so circumstanced, we do not believe that such positions should be maintained interminably and hereby fix a period of 90 days from service of a copy of the order to be entered on this decision in which petitioners must elect and respondents must effectuate any such retransfer. To that end a sufficient number of teaching positions must be kept to provide for any such retransferees.

As to summer employment, Special Term found that OMRDD teachers were being given preferred consideration in this regard, albeit with other qualified applicants, and that the evidence did not indicate otherwise. We agree with Special Term on this issue and find that this procedure and policy do not violate our prior order. We also find no violations of our prior order in earmarking for abolition teaching positions as they become vacant in favor of the creation of more developmental specialist positions, if such elimination is done in good faith. We further believe that the public good will be better served by permitting the administration of the positions, including layoffs for purely budgetary reasons, as separate and distinct titles (*see, Matter of Saur v Director of Creedmoor Psychiatric Center,* 41 NY2d 1023, 1024). On this record, we find no violations of our prior order sufficient to require injunctive relief.

Order modified, on the law, without costs, by replacing the decretal paragraphs thereof with a provision directing respondents to maintain sufficient teacher positions to accommodate those developmental specialists who elect to revoke their election to be reclassified, such election to be made and effectuated within 90 days after service of a copy of the order to be entered upon this decision, and, as so modified, affirmed.

Mahoney, P. J., Main, Casey and Yesawich, Jr., JJ., concur; Mikoll, J., dissents and votes to affirm in the following memorandum.

Mikoll, J. (dissenting). I respectfully dissent. Civil Service law § 136 (1) defines teachers in relevant part as: "any employee of a state facility or institution * * * in the executive department and in the departments of correctional services * * * holding a position the principal duty of which is the teaching or instruction of patients or inmates".

Petitioners' positions are teaching positions within the meaning of the Civil Service Law. This court has previously held that respondents could not reclassify petitioners' teaching positions to those of developmental specialists unless this was done on a voluntary basis (*see, Matter of Public Employees Fedn. v Division of Classification & Compensation,* 86 AD2d 679, 680).

Since these positions involve teaching, Civil Service Law § 136 (2) "mandates a 10-month work year for State teachers as defined by subdivision 1 thereof" (*id.*). The 10-month work year pursuant to Civil Service Law § 136 is reflective of a declared legislative policy which provides that: "It is hereby declared to be the policy of the state of New York that teachers employed in the various departments and institutions of this state should be of the highest possible caliber and competence, and accordingly, that such teachers should share in the same opportunities now made available to teachers in the public schools of this state with respect to the calendar of their work-year. In order that such teachers may appropriately utilize the summer months for further academic training in furtherance of their professional careers, *it is declared to be the policy of this state* to provide by law and appropriate rule to carry out the intent of such law, *that teachers employed by the state of New York shall work, as far as practicable, a calendar year similar to the public school calendar year of the public school teachers*" (L 1965, ch 454, § 1 [emphasis supplied]).

Any consent to reclassification of such a position must be given by petitioners so as to conform to Civil Service Law § 136 (2). While respondents have some discretion in determining whether to abolish positions within the Civil Service system,

such reclassification cannot be arbitrary and capricious (*see, Matter of Saur v Director of Creedmoor Psychiatric Center,* 41 NY2d 1023, 1024).

Respondents' contention that its layoff of teachers rather than developmental specialists with less seniority is part and parcel of its entitlement to determine its needs and was made in good faith in order to maximize use of available resources is unpersuasive. Both series of job titles are essentially similar except for the 10-month versus 12-month work period. Therefore, respondents' layoff plan is in violation of the legislative policy considerations underlying Civil Service Law § 136. It is patently coercive in its intention and effect as to those teachers who refused reclassification and violates the voluntariness concept referred to by this court in our prior determination (*see, Matter of Public Employees Fedn. v Division of Classification & Compensation, supra,* pp 679-680). Additionally, respondents' actions are also in violation of the protection afforded teachers under Civil Service Law § 80 (1).

The order of Special Term should be affirmed.